## Covington v. Covington.

(Decided June 12, 1923.)

## Appeal from Warren Circuit Court.

1. Divorce—Evidence Held Not to Entitle Wife to Divorce for Cruelty.
—Testimony by a wife as to the cruel treatment of her by her husband, not corroborated by facts testified to by any other witness, and contradicted by a large number of witnesses as to the husband's character and reputation and conduct toward his wife, held to sustain a judgment of the chancellor denying the wife's petition for divorce on the ground of cruelty.

2. Divorce—Allowance of $750.00 to Wife's Attorneys Held Reasonable.—Where defendant in a suit for divorce owned a farm worth $75,000.00, and the wife would inherit a portion of her father's farm worth $50,000.00, and the record in the case contained 600 or 700 pages, an allowance by the chancellor of $750.00 as attorneys' fees for the wife's attorneys was fair and reasonable.

3. Divorce—Allowance of $5.00 Per Month for Support of Child Increased to $40.00.—In a suit for divorce where divorce was denied, but the wife was given custody of an infant child, and the husband owned a farm worth $75,000.00, an allowance of $5.00 a month to the wife for the support of the child was inadequate and will be increased to $40.00 a month.

JOHN D. CARROLL, SIMS & SIMS and THOMAS, THOMAS & LOGAN for appellant.

RODES & HARLIN for appellee.

Opinion of the Court by Chief Justice Sampson— Affirming in part and reversing in part.

The judgment appealed from was rendered in the Warren circuit court in a divorce suit filed by appellant, Dora Covington, against her husband, Albert Covington, in February, 1922, wherein she sought an absolute divorce and alimony in the sum of $25,000.00. The chancellor denied her divorce and alimony but gave her the custody of the infant child and $5.00 per month for its support. The decree also allowed counsel for appellant $750.00 as fees, and adjudged appellee pay the cost of the action. From this judgmnt Mrs. Dora Covington appeals. Appellee prayed an appeal in the lower court but did not offer to prosecute it in this court.

They were married in January, 1918, in Warren county. Immediately thereafter they left for Florida

to spend their honeymoon. Appellee, Covington, had been married before and had three children, all boys. His first wife was dead. With them they took these three children. After spending several weeks in Florida they returned to his home near Bowling Green and began to keep house. Not long after they so took up their residence the mansion house burned down and the parties moved into a tenant house on the farm which belonged to Mr. Covington. As soon as he reasonably could appellee began the erection of a new house on the old site, the plans for which were made by Mrs. Covington, and it was completed in the summer when the family moved into it. In the meantime the oldest son of Mr. Covington, a mere boy about sixteen or seventeen years of age, on account of illness, was compelled to go to Texas. He remained away several months. Everything went well with appellant and appellee until about the time the new home was completed when she asserts, and supports it by her own evidence, he called her bad names to such an extent and with such regularity as to make her life a burden. She was about to become a mother and she asserts that appellee objected to that and made matters very disagreeable for her. Along about this time, according to her statement, appellee became very mean and cruel to her. She says he was stingy and would not provide for her properly; that he did not furnish help about the house and that he neglected her. According to what she says appellee Covington was a very ill-bred, disagreeable and vicious person. After her child was born she had septicemia and was confined to her bed for several weeks, during which time she had the services of several physicians and two nurses most of the time, and at least one nurse all the time. The baby was sent to the home of her brother, whose wife was to take charge of it until appellant recovered. It remained there for several weeks, and when appellant was able she asked to be taken to the home of her brother where she could see her baby. This was done. After reaching the home of her brother she declined to return home and asserted that upon no ground or for any reason would she return to appellee and live with him as his wife because, as she said, he was cruel and inhuman to her. When appellee importuned her to return to his home and to live with him she flatly refused to do so. He begged and pleaded with her to come back and in doing so put his arm around her at her brother's home. This seemed to have offended the bro-

ther and when appellee returned the next day to further urge her to return to him the brother made it very unpleasant for appellee and in effect drove him away.

Appellant called several witnesses, sixteen in all, to sustain her charge of cruel and inhuman treatment. The nurse gave evidence indicating that Mr. Covington had upon one or two occasions seemed in ill humor at the home, but on cross-examination it was shown that he had a great many things to annoy him. Besides having a sick wife he had a sick son in Texas. His expenses were large, and as a farmer he did not have a big income. Aside from that given by her she produced no evidence worth mentioning which indicated that Mr. Covington had cursed or abused her or in any manner mistreated her. The witnesses knew very little about what took place. None of them heard him speak ill of or towards her and none claimed to have heard him curse her.

On the other hand appellee Covington proved by a large number of witnesses that he did not curse upon any occasion; that he was not in the habit of cursing. None of his neighbors had heard him curse. Those with whom he associated most frequently declared they never heard him swear an oath. It was further given in evidence by a dozen or more witnesses that he was one of the most polite, courteous, kindly and considerate persons of their acquaintance. He proved a splendid reputation. Many of these persons had frequently been at his home. Some of them had spent some time there but none of them had heard him speak ill or cross to appellant. On the other hand, they testified to many instances of kindnesses and displays of devotion and love toward appellant. According to these witnesses he provided for her well; bought everything she asked for and insisted upon her buying other things, and made the home as comfortable as he reasonably could. She was allowed to select all the furniture for the new home, which she had planned and which he had built in accordance with her desires, and to select the paper for the walls; when she would suggest a particular pattern for a room he immediately sanctioned it and told her whatever pleased her pleased him. These facts were proven by salespeople and persons working about the new house. Many high class citizens were called by him to prove his amiability, reasonableness and gentleness. We have scarcely read a record wherein any individual has established such a splendid reputation. His whole

life, according to his thirty odd witnesses, was a pointed, direct and definite contradiction of all that appellant said concerning his abusive talk to her and his lack of consideration for her and the baby. She was proven to be a woman of good character and of a good family. Both she and Mr. Covington were reared in Warren county on adjoining farms. His farm, a large one, is valued at about $75,000.00. Her father's farm, of which she inherits a portion, is worth about $50,000.00. She had not come into possession of this estate at the time of the bringing of this action, but no doubt has by this time. She was a strong, able-bodied, active, industrious, dominating character, while he appears to have been a very quiet, even-tempered, polite, gentle individual.

According to all the evidence appellee took appellant with him almost everywhere he went. They generally traveled by automobile, and those who met and saw them on different occasions testified they seemed to be perfectly happy until about the time of the birth of the child. The blood poison which she suffered rendered her a very sick woman for several weeks and no doubt upset her nervous system and accounts in a large measure for the deplorable situation in which she finds herself.

The record in this case, while rather large, is not of an extraordinary size, containing only about 600 or 700 pages. She employed able and efficient counsel. They worked diligently in her behalf; but we are persuaded from a consideration of the record and of the surrounding circumstances, including the value of the estate of appellee Covington, that $750.00, the amount allowed as attorney fees by the chancellor below, is a fair and reasonable fee.

We have however reached the conclusion that the allowance for the support of the infant—$5.00 per month—is entirely too meager and should have been fixed at not less than $40.00 per month, and on a return of the case the chancellor will reform his decree so as to give the child this sum monthly from the date of the judgment. Of course, if the situation changes it will be within the power of the chancellor to regulate the allowance to meet new conditions.

The chancellor properly adjudged all the cost, including that incurred on this appeal, against the appellee under section 900 of our statutes.

For the reasons indicated the judgment is affirmed in all respects except as to the allowance to the infant but reversed as to that item, with direction to modify the decree as set forth in this opinion.

Judgment affirmed in part and reversed in part.